IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

PATRICK HOGAN, Individually and on
Behalf of All Others Similarly Situated,

                Plaintiff,

v.                                                Civil Action No. 16-CV-02611-RBJ

PILGRIM'S PRIDE CORPORATION,
WILLIAM W. LOVETTE, and
FABIO SANDRI,

                Defendants.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'
SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS**

This case is ready to proceed to discovery. This Court previously held that in the first amended complaint, "plaintiff has sufficiently satisfied the first PSLRA requirement for pleading false or misleading statements," ECF No. 41 at 11, but "[b]ecause plaintiff did not plead the underlying antitrust conspiracy with sufficient particularity according to the PSLRA's requirements, his claim for § 10 violations fail to satisfy the falsity elements," *id*. at 18. The SAC, "now the operative complaint," *Hogan v. Pilgrim's Pride Corp.*, 73 F.4th 1150, 1162 (10th Cir. 2023), alleges detailed facts, through emails, text messages and phone data, that tie Pilgrim's and Defendant Lovette to collusive price-fixing activity during the Class Period. If that weren't enough, Pilgrim's then pleaded guilty to anticompetitive price-fixing conduct during the SAC's entire relevant period. With these facts on the table, there is simply no breathing room to argue a lack of falsity or scienter.

As a result, Defendants first try to take the guilty plea off the table by arguing that it is not alleged in the SAC. But, under Fed. R. Evid. 201 and applicable Tenth Circuit law, the Court may take judicial notice of the guilty plea. *See Mid-South Iron Workers Welfare Plan v. Harmon*, 645

1

F. App'x 661, 665-66 (10th Cir. 2016). And, helpfully, the Tenth Circuit already took notice of the guilty plea in its opinion. *Hogan*, 73 F.4th at 1155 n.4 (citing Information at 2, *United States v. Pilgrim's Pride Corp.*, 2020 WL 7022076 (D. Colo. Oct. 13, 2020).[1]

Defendants next try to diminish the compelling allegations of the SAC by arguing that Mr. Lovette was acquitted of criminal charges. Putting aside this paradoxical position that the Court should take notice of the acquittal,[2] but not Pilgrim's guilty plea, the Tenth Circuit presciently discredited this argument as well: "Of course, a criminal acquittal 'does not foreclose civil litigation, which employs a lower burden of persuasion.'" *Id.* (citation omitted). This is especially true here, where *two* earlier criminal trials resulted in hung juries, demonstrating that even under the more demanding burden, multiple reasonable jurors found Mr. Lovette guilty.

When Defendants get around to addressing "new relevant cases," the narrow purpose for which the supplemental brief was granted, their cases do nothing to support their motion to dismiss.

Defendants' principal case, *United Food & Commer. Workers Int'l Union Local 464A v. Pilgrim's Pride Corp.*, 2022 U.S. Dist. LEXIS 40888 (D. Colo. Mar. 8, 2022) ("*UFCW*") is not "nearly identical" to this case, as Defendants argue. Rather, Judge Moore's opinion repeatedly stresses an important difference: "nearly all the alleged conduct in the Complaint related to the bid-rigging scheme **precedes the class period, much of it by years**." *Id.* at *8 (emphasis added). Indeed, none of the collusive activity detailed in the initial Indictment that the *UFCW* plaintiffs relied on occurred in their class period. This raised a causal issue, because the initial Indictment

---

[1] If the Court requires the guilty plea to appear in a complaint, Plaintiff should have leave to amend; however, such an amendment is unnecessary and would further prolong this 7-year-old case.

[2] The Court may also take judicial notice of the Superseding Indictment, which named Defendant Lovette as a criminal defendant. *See* ECF No. 61-1.

was the corrective disclosure alleged in *UFCW*. *Id*. at *8-9. Here, both the relevant time period and Class Period fall squarely in the period during which Pilgrim pled guilty to anti-competitive practices, and nearly all the incidents detailed in the Indictments pertain to our relevant time period.

More importantly, in stark contrast to the *UFCW* complaint, which did "not show[] that the bid-rigging scheme. . .could be credited with. . .driving its success <u>during the class period</u>," the SAC includes exhaustive allegations as to how "collusive efforts by the industry provided unprecedented financial stability to the industry and allowed Pilgrim to report record earnings and profit margins during the Class Period…." ¶8; *see also* ¶¶13, 33-128, 310-62. In fact, the SAC here contains a concession from Lovette that "revenue is going to be a function of price, in part, and in this case a big part; and obviously, price is going to strengthen as supply continues to be disciplined and constrained," which is not alleged in *UFCW*.[3] This Court recognized that Plaintiff clearly pled this connection. ECF. No. 41 at 4 ("According to the complaint, this multi-pronged conspiracy to cut production and raise broiler prices led to Pilgrim's ensuing financial stability and success and artificially increased the value of Pilgrim's securities.").

Further, Defendants' attempt to use *UFCW* to unwind this Court's prior ruling and hold every alleged misrepresentation and omission as inactionable opinion and puffery is unpersuasive. First, if any of the misstatements could even be classified as opinion, Judge Moore erroneously

---

[3] This quotation also provides context the Court in *UFCW* found to be missing; namely, that Pilgrim's anti-competitive practices had "a significant impact on Pilgrim's bottom line." *Id*. at *10. Defendants interpreted this as requiring Plaintiff to precisely quantify the impact of the conspiracy, which not only conflicts with Supreme Court precedent that rejects such an approach, *see Matrixx v. Siracusano*, 563 U.S. 27, 45-47 (2011), but would impractically foist upon Plaintiff an impossibly onerous pleading requirement that the Tenth Circuit has rejected. *See Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1101 (10th Cir. 2003) (holding the PSLRA "does not require pleading of all of the evidence and proof thereunder supporting a plaintiff's claim.").

held, citing *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015), that "Lead Plaintiff must plead facts showing that Defendants did not actually hold the stated opinions." *UFCW*, 2022 U.S. Dist. LEXIS 40888, at *13-14. The Tenth Circuit, a month later, made clear that "no matter how heartfelt their subjective beliefs, corporate executives…cannot make material misrepresentations to shareholders in disregard or contravention of obvious facts…." *SEC v. GenAudio Inc.*, 32 F.4th 902, 924 (10th Cir. 2022) (citing *Omnicare*, 575 U.S. at 188). Moreover, the same types of statements have been sustained as actionable in securities fraud cases across the country. *See* ECF No. 35 at 5-7. To that end, the Second Circuit recently noted that "a company's statement that its distribution market is 'highly competitive,' might be actionable when considered within the context that the company did not actually operate in a competitive market and instead colluded with its competitors to fix prices." *Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 94 (2d Cir. 2023). Finally, Defendants urged the Tenth Circuit to affirm based on the *UFCW* decision, and it did not. *See Hogan v. Pilgrim's Pride Corp.*, No. 21-1445, Appellee Br. at 34 n.10, (10th Cir. Mar. 25, 2022).

Next, Defendants' motive cases do not support dismissal. While motive can support an inference of scienter, "the absence of an alleged motive is not fatal to Plaintiff's claims." *Smallen v. Western Union Co.*, 950 F.3d 1297, 1311 (10th Cir. 2020). Thus, whether the motive allegations here add to the scienter calculus is largely irrelevant when considering the SAC's other allegations are correspondingly greater and demonstrate a strong inference of scienter on their own. In addition to the ***direct*** evidence of Defendant Lovette's knowledge and involvement in the collusive activity, Plaintiff here has about the strongest scienter evidence possible: Pilgrim's guilty plea. Neither of Defendants' cited cases (*Meitav* and *Molson*) can say the same. In sum, Defendants' stock sales

4

and Plaintiff's myriad other scienter allegations are mere icing.[4]

Finally, Defendants' citations to *SEC v. Rio Tinto plc*, 41 F.4th 47 (2d Cir. 2022) and *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164 (S.D.N.Y. 2022), are unavailing. The foundation of those opinions, that in order to preserve the distinction between (a), (b) and (c) claims, "Plaintiffs must allege 'something extra' in order to bring a scheme liability claim," 625 F. Supp. 3d at 251, has already been rejected by the Tenth Circuit based on its reading of *Lorenzo v. SEC*, 139 S. Ct. 1094, 1100 (2019), and the "prohibitions' language, purpose, and overlap." *See Malouf v. SEC*, 933 F.3d 1248, 1259-60 (10th Cir. 2019). Nevertheless, the collusion to fix prices is the "something extra," as Defendant Lovette conceded, the Company's revenues (and in turn, stock value) were directly correlated to chicken prices.[5]

Dated: October 12, 2023

*/s/ Kim E. Miller*
Kim E. Miller
**KAHN SWICK & FOTI, LLC**
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (212) 696-3730
Email: kim.miller@ksfcounsel.com
*Lead Counsel for Lead Plaintiff and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 12, 2023, I filed the foregoing upon all counsel of record by using the CM/ECF system, which will provide service of such filing(s) via email.

*/s/ Kim E. Miller*
Kim E. Miller

---

[4] Defendants' view that scienter is *always* rebutted in cases where defendants increase their stock holdings would not only lead to absurd results, but also would make no sense where, like here, a third party revealed the truth underlying Defendants' misrepresentations and omissions.

[5] Recognizing the anticompetitive conduct itself as a "scheme" or "conspiracy" distinguishable from the claims based on "statements," the Tenth Circuit panel at oral argument repeatedly questioned how Defendants' view of repose would operate against Plaintiff's scheme liability claims. Oral Arg. at 27:18-28:18, 30:11-20.