IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge R. Brooke Jackson

Case No. 1:16-cv-2611-RBJ

PATRICK HOGAN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

PILGRIM'S PRIDE CORPORATION,
WILLIAM W. LOVETTE,
FABIO SANDRI,

Defendants.

---

ORDER on MOTION TO DISMISS SECOND AMENDED COMPLAINT

---

Plaintiff, now George Fuller, asserts claims under §10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 on behalf of himself and others who purchased Pilgrim's Pride securities between February 21, 2014, and November 17, 2016. Mr. Fuller purchased approximately 7,500 shares of Pilgrim's Pride stock in January and February 2015. He alleges that at the time he purchased his shares defendants concealed that the company was participating in a price-fixing conspiracy in violation of the antitrust laws, and that when the conspiracy was publicly revealed the share price immediately dropped, causing him to sustain a loss.

This case has a long history. It was filed in October of 2016. In March 2018 this Court granted defendants' motion to dismiss plaintiff's [First] Amended Complaint ("FAC"). ECF No.

41 (mislabeled by the Court as dismissing the Second Amended Complaint). I found that "plaintiff did not plead the underlying antitrust conspiracy with sufficient particularity." *Id.* at 18. The case was dismissed without prejudice. Later the Court denied plaintiff's motion for reconsideration but granted leave to amend. ECF No. 46.

Plaintiff filed a second amended complaint in June 2020 (the "SAC"). ECF No. 47. The SAC essentially repeated the allegations in the original and first amended complaints but added new allegations. I will discuss the new allegations later in this order. In July 2020 defendants moved to dismiss for the second time, asserting that the SAC was untimely, and that it still did not state a claim that passed muster under the demanding standards of the Private Securities Litigation Reform Act of 1995 or the requirements of Fed. R. Civ. P. 8(a), (9)(b), and 12(b)(6). ECF No. 58.

In April 2021 I granted defendants' second motion to dismiss. ECF No. 74. I did not address whether the SAC cured the deficiencies that had led to my dismissal of the case previously. Rather, I concluded that the action was barred by the statute of repose. ECF No. 74 at 16. Defendants appealed, and the Tenth Circuit determined that my application of the statute of repose was erroneous. *Hogan v. Pilgrim's Pride Corporation,* 73 F.4th 1150 (10th Cir. 2023). The court reversed the dismissal and remanded the case for further proceeding consistent with its opinion.

On remand I granted the parties leave to file five-page supplements to its previous briefing. I have reviewed those supplements, ECF Nos. 94 and 95, as well as the original briefs. The question before me now is whether the SAC states a claim upon which relief could be granted.

## STANDARD OF REVIEW

Rule 10b-5, which implements § 10(b) of the Exchange Act, makes it unlawful "(a) to employ any device, scheme, or artifice to defraud, (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, mot misleading, or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit on any person, in connection with the purchase or sale of a security." 17 C.F.R. § 240.10b-5.

When "faced with a Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must, as with any motion to dismiss for failure to state a claim on which relief can be granted, accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id.*

"A plaintiff suing under Section 10(b), however, bears a heavy burden at the pleading stage." *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1333 (10th Cir. 2012). To state a securities fraud claim, the complaint must allege that (1) the defendant made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not misleading; (2) the statement complained of was made in connection with the purchase or sale of securities; (3) the defendant acted with scienter, that is, with intent to defraud or recklessness; (4) the plaintiff relied on the misleading statements; and (5) the plaintiff suffered

damages as a result of his reliance. *Id.* (citing *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095 (10th Cir. 2003)).

Under the Private Securities Litigation Reform Act of 1995, 15 U.S. C. §§ 78a et seq.("PSLRA"), a heightened pleading standard applies "for securities fraud cases generally, and particularly in regard to the scienter element." *City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1259 (10th Cir. 2001). The PSLRA requires that:

> (1) [T]he complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.
>
> (2) [T]he complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(1)–(2).

In this case, defendants seek dismissal on the ground that it fails to adequately plead falsity, scienter, and loss causation. In my prior order I focused on the falsity prong, and because I resolved that issue in favor of the defendants, I did not further discuss scienter or causation. I concluded that a heightened pleading applied to the falsity element as well as the scienter element, and that it applied both to pleading the allegedly misleading or untrue statements and to the facts that establish the alleged underlying price-fixing conspiracy.

## FINDINGS REGARDING THE ALLEGATIONS IN THE SAC

The Tenth Circuit's order noted that the SAC did not identify any additional statements by defendants that were allegedly false or misleading. *Hogan,* 73 F.4th at 1155. However, notwithstanding that I ultimately dismissed the FAC, I did find that it satisfied the PSLRA's heightened requirement for pleading false or misleading statements because it "contains a

detailed accounting of each allegedly misleading statement made during the Class Period, including press releases, SEC filings, and investor calls, and the complaint explains why each statement is alleged to have been misleading at the time it was made." ECF No. 41 at 11. In doing so I considered the six-factor test set forth in *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1098-99 (10th Cir. 2003).[1] That finding applies equally to the SAC.

Rather, my original order of dismissal focused on "the complaint's allegations about the underlying antitrust conspiracy, which are made on information and belief." *Id.* Under the PSLRA, "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). I agreed with the defendants that the FAC did not satisfy that burden. ECF No. 41 at 11.

Defendants argued that the FAC did not set forth sufficient particulars of the "who, what, and where" of the purported antitrust conspiracy. *See* ECF No. 34 at 2. Plaintiff responded that he alleged that defendants participated in a collusive scheme to fix boiler prices by sharing proprietary production data, specifically including details about "two rounds of coordinated production cuts," the "particular industry meetings . . .attended to discuss production cuts, the specific means by which they cut production. . . and the impact of the production cuts on Broiler prices." ECF No. 41 at 11-12 (quoting ECF No. 35 at 10-11). In my view, the FAC nevertheless fell short of alleging an underlying antitrust conspiracy. Briefly, I found that plaintiff had not

[1] The factors are (1) the level of detail provided by the facts stated in a complaint; (2) the number of facts provided; (3) the coherence and plausibility of the facts when considered together; (4) whether the source of the plaintiff's knowledge about a stated fact is disclosed; (5) the reliability of the sources from which the facts were obtained; and (6) any other indicia of how strongly the facts support the conclusion that a reasonable person would believe that the defendant's statements were misleading.

alleged particularized facts showing parallel conduct or the existence of an agreement to cause higher prices. *Id.* at 13-18.

With that background, I turn plaintiff's additional allegations in the SAC. It added the following to the allegations in the FAC:

- In February 2017 the Florida Attorney General required Pilgrim's Pride, Fieldale Farms, Sanderson Farms, Koch Foods and Tyson foods, all producers in the broiler industry, to produce extensive documentation relating to an investigation of violations of Florida and federal antitrust laws. ECF No. 48-1 at 124-25.[2]
- In July 2017 Fieldale Farms agreed to an "ice breaker" settlement with the plaintiffs in the *Maplevale* antitrust action. In addition to paying a $2.25 million fine, Fieldale agreed to cooperate with the prosecution of the remaining defendants, including Pilgrim's Pride, by providing documents, depositions, and the contact information of employees of co-conspirators. Four other defendants subsequently agreed to settlements in this case. *Id.* at 126-27.[3]
- In November 2017 the judge in the *Maplevale* litigation denied the remaining defendants' motion to dismiss plaintiff's Sherman Act claims. In a 92-page opinion, the court held "that Plaintiffs have plausibly alleged parallel conduct" and "that the alleged factual circumstances plausibly demonstrate that the parallel conduct was a product of a conspiracy." The Court found that "[t]here is simply too much unusual market

---

[2] ECF No. 48-1 is the red-lined version of the SAC.

[3] The *Maplevale* is an antitrust action filed in the Northern District of Illinois in 2016. It was mentioned several times in the FAC. *See, e.g.,* ECF No. 48-1 at 13-14. The plaintiff, Maplevale Farms, alleged that several companies including Pilgrim's Pride participated in a conspiracy to fix broiler prices.

movement, unusual public statements, unusual information sharing through Agri Stats, and a coincidence of business strategies that make dismissal of Plaintiffs' claims at this point in the case inappropriate." *Id.* at 129-130.

- In June 2019, the Department of Justice intervened in the *Maplevale* litigation. A law professor who formerly worked in the antitrust division of the DOJ, stated in a contemporaneous article that the intervention was significant because it signaled that the DOJ thinks that there was a serious violation possibly warranting evaluation for a criminal indictment. *Id.* at 15.
- On June 3, 2020, a federal grand jury in Denver indicted four executives, two from Pilgrim's Pride and two from competitor Claxon Poultry, for conspiring to fix prices and rig bids for broiler chickens throughout the United States from as early as 2012 through at least early 2017. One of the Pilgrim's Pride executives, Jason Penn, was an Executive Vice President. William Lovette (later an additional defendant) was the President and CEO of Pilgrim's Pride from approximately January 2011 until approximately March 2019. *Id.* at 7. An article by an investigative journalist who covers the poultry industry called the indictment "breathtaking" and the evidence "astounding." The author wrote, "It's hard to get anything more solid than having text messages of people working together to rig prices." *Id.* at 7, 16.[4]
- The SAC contains an entire section discussing the facts set forth in the indictment. ECF No. 48-1 at 156-61. Rather than repeating those alleged facts in this order, I take judicial

[4] The case is *United States v. Jayson Jeffrey Penn,* No. 20-cr-00152-PAB (D. Colo.). Mr. Lovette, a defendant in the present case, was named as a defendant in the *Penn* case in a Superseding Indictment filed on October 6, 2020.

notice of the indictment, which is found in the files of this district, *U.S.A. v. Penn,* No. 20-cr-00152-PAB (D. Colo.), at ECF No. 1. It sets forth facts supporting the alleged conspiracy from the perspective of the Grand Jury and the Department of Justice.

- As also noted in the Tenth Circuit's opinion, "the SAC added factual allegations to support Plaintiff's existing claims that Pilgrim had participated in a conspiracy, that it had failed to disclose the existence of this conspiracy, and that this failure to disclose constituted securities fraud. The additional allegations involved the use of spot pricing – that is, selling a commodity based on an indexed price at which it can be bought or sold immediately – in broiler markets, concerted manipulation of the Georgia Dock pricing index related to the spot price for broiler chickens, production cuts by Pilgrim and other poultry producers, and allegations in a criminal antitrust indictment recently by a federal grand jury in Colorado against four industry executives (two from Pilgrim and two from another company." *Hogan,* 73 F.4th at 1155. *See* ECF 48-1 at 46-48, 50, 56-58, 128-129.[5]

Finally, I take judicial notice of two relevant events that have taken place since the original briefing of the motion to dismiss the SAC:

- On February 23, 2021, Pilgrim's Pride Corporation agreed to plead guilty to bid rigging and price-fixing. *United States v. Pilgrim's Pride Corporation,* No. 20-cr-00330-RM (D. Colo.). The Information charged the company with participation in a conspiracy to suppress and eliminate competition between at least early 2012 and at least early 2019 by

[5] The Georgia Dock was mentioned frequently in the FAC. The new allegations in the SAC basically provided additional details and industry commentary.

rigging bids and fixing prices and other price-related terms for broiler chicken products sold in the United States. ECF No. 1 in that case at 1. The Elements of the Offense section of the plea agreement included that (a) the conspiracy described in the Information existed at or about the time alleged, and (b) the defendant knowingly became a member of the conspiracy. ECF No. 58 at 5. The agreed factual basis for the plea was that during a period from at least 2012 through at least early 2017, "defendant participated in a conspiracy with at least one competitor engaged in the production and sale of broiler chicken products to suppress and eliminate competition by rigging bids and fixing prices and other price-related terms for boiler chicken products sold in the United States." ECF No. 58 at 4. On the same date judgement was entered finding Pilgrim's Pride guilty and imposing a fine of $107,923, 572. ECF Nos. 60-62. [6]

- On July 7, 2022, following two lengthy trials that ended in mistrials due to hung juries, a jury found the two Pilgrim's Pride officers who had been indicted in the price-fixing and bid-rigging case before Chief Judge Brimmer not guilty. *United States v. Jayson Jeffrey Penn,* No. 20-cr-00152-PAB, at ECF No. 1425 in that case.

**CONCLUSIONS**

The question is whether plaintiff has now sufficiently pled falsity, scienter, and causation to survive a motion to dismiss.

[6] There is an inconsistency between the end of the relevant period as charged in the Information and seemingly accepted in element (a) in the Elements of the Offense section of the Plea Agreement (at least early 2019) and in the Factual Basis section (at least early 2017). Either period covers the period alleged by plaintiff Lowell, February 2014 through November 2016.

**A. <u>Falsity</u>.**

The SAC provided addition information directed to the PSLRA's alternative requirement that "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Many of the additions are references to developments in other cases in which Pilgrim's Pride has similarly been accused of participating in a price-fixing conspiracy during the relevant time period. Plaintiff's case is largely built by piggybacking on other cases, and these additions do bolster the facts on which he relies.

The most important addition to the FAC that is set forth in the SAC is the reference to the June 3, 2020, indictment of two Pilgrim's Pride officers in *U.S.A. v. Jason Jeffrey Penn,* No. 20-cr-00152-PAB (D. Colo.) and the facts charged by the Grand Jury. Although the case charged individual officers of Pilgrim's Pride, I find that it is reasonable for plaintiff to have relied on the facts set forth in the Information in that case as additional support for his information and belief that the company participated in a price-fixing conspiracy during the period relevant to this case.

It is true that, after the filing of the SAC and the original briefing of the pending motion, the remaining individual defendants were acquitted. However, the case was tried under the criminal burden of proof, and in the first and second trials at least some jurors were convinced by the evidence beyond a reasonable doubt that the defendants were guilty.[7]

[7] The testimony and exhibits from the trials contain a great deal of information that is likely relevant to the present case. I am not aware of the restrictions, if any, that have been placed on this information; at least some of it is available in the public file in that case. Before the parties begin discovery in the present case, they should carefully consider what additional discovery is reasonably necessary considering the information already generated in the criminal case (and perhaps other cases).

Also important, in my mind, is that after the original briefing of the pending motion, Pilgrim's Pride pled guilty to price-fixing and bid-rigging during a time period that spanned the entire period relevant to this case. Defendants argue that plaintiff therefore cannot "draw upon it" in support of his opposition to the pending motion. *See* ECF No. 94 at 2 n.2. But the Court can at this time take judicial notice of this highly relevant development. It supports the Court's conclusion, based on the additions to the FAC made in the SAC, that plaintiff has sufficiently alleged an underlying antitrust violation in this case.

**B. <u>Scienter</u>.**

The allegations added in the SAC, including the Northern District of Illinois, Florida, and the *Penn* case in the District of Colorado, convince me that plaintiff has sufficiently pled scienter against Pilgrim's Pride, even under the heightened pleading standing. Moreover, Pilgrim's Pride's plea of guilty in the criminal case, though not mentioned in the SAC because it could not have been, speaks for itself, and I cannot simply close my eyes to it. The absence of a reference to it in the SAC can be easily cured by a simple addition in a Third Amended Complaint. Regardless, its absence in the SAC does not change my analysis of whether a motion to dismiss should be granted.

Mr. Lovette, the President and CEO, was charged in the Superseding Indictment, and at least some jurors in two trials believed that the evidence was sufficient to hold him guilty under the more demanding criminal burden.

Mr. Sandri, the Chief Financial Officer, was not charged. The allegations of scienter as to him in the FAC were thin, at best. The only substantive mentions of Mr. Sandri in the allegations added in the SAC were that (1) the company failed to preserve his cell phone records;

(2) he sold 45% of his stock in 2014 and 2015; and (3) his sales were "suspiciously timed." ECF No. 48-1 at 129, 135-36. Plaintiff made little effort to show Mr. Sandri's knowledge or even recklessness in his response to the pending motion. *See* ECF No. 59 at 10. He is scarcely mentioned in defendants' supplemental brief, *see* ECF No. 94 at 3; and he is not mentioned at all in plaintiff's supplemental brief. ECF No. 95.

It might be reasonable to infer that Mr. Sandri was aware of the basic facts of the alleged conspiracy based on his position as Chief Financial Officer of the company. In fact, I suspect he was so aware. But I respect the Tenth Circuit's admonition that "[g]eneralized imputations of knowledge do not suffice, regardless of defendants' positions within the company." *City of Philadelphia v. Fleming,* 264 F.3d 1245, 1264 (10th Cir. 2001). At bottom, plaintiff has not pointed me to allegations of fact that I can find to be sufficient to survive the PSLRA's heightened pleading standard as to scienter with respect to him.[8]

**C. <u>Causation</u>.**

Plaintiff alleges that because of defendants' failure to disclose Pilgrim's Pride's participation in an illegal price-fixing conspiracy, he "purchased Pilgrim securities at artificially inflated prices during the Class Period, and was harmed when the price of Pilgrim stock dropped as a result of the revelations of the truth about Pilgrim's participation in an improper collusive scheme to fix, raise and maintain Broiler prices, the Company's business practices, and financial condition." ECF No. 47 at 16. He had previously identified his alleged losses in a "Loss Chart, ECF No 8-2.

[8] I have carefully considered, in particular, paragraphs 300 and 304 of the SAC. ECF No. 47 at 129, 131.

Defendants have not argued that the PSLRA's "heightened pleading standard" applies to pleading causation. In *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336 (2005), the Court stated,

> We concede that the Federal Rules of Civil Procedure require only "a short and plaint statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a)(2). And we assume, at least for argument's sake, that neither the Rules nor the securities statutes impose any special further requirement I respect to the pleading of proximate causation or economic loss.

*Id.* at 346. While the latter statement was an assumption, nothing has been brought to my attention that contradicts it. On the contrary, in *In re SemGroup Energy Partners, L.P.,* 729 F. Supp. 2d 1276 (N.D. Okla. 2010), the court held, correctly in my view, that:

> To establish "loss causation," the plaintiff must demonstrate a causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the plaintiff. Loss causation requires only a "short and plain statement [that] must provide defendants with fair notice of what the plaintiff's claim is and the grounds upon which it rests."

*Id.* at 1301 (quoting *Dura,* 544 U.S. at 346).

*Dura* did hold that an allegation that a plaintiff purchased securities at inflated prices due to a company's misrepresentations or non-disclosures does not by itself satisfy the requirement to plead causation. 544 U.S. at 342-46. However, Mr. Fuller does more than allege that he purchased his stock at inflated prices. Although this is not clear in the SAC, his personal claim appears to be:

- He purchased Pilgrim's Pride share on January 16, 2015, at $34:00 and February 19, 2015, at $27.95. ECF No. 8-1 at 3.
- Investors began to learn of Pilgrim's Prides' participation in a price-fixing scheme when the *Maplevale* litigation was filed on September 2, 2016. SAC, ECF No. 47 at 117-18.

- A report by an industry analyst, Timonthy Ramey, on October 7, 2016, brought the facts to light more fully, causing an immediate decline in the stock price. *Id.* at 119.
- On October 7, 2016, the trading price for Pilgrim's Pride stock was $19.63. ECF No. 8-2 at 3.

- Therefore, as of October 7, 2017, Mr. Fuller had a (paper) loss of $85,635.71. *Id.* [9]

It might be difficult to prove a causal link between a particular event when the alleged conspiracy was disclosed and actual losses sustained by the plaintiff because of the disclosure. However, he need not prove his claim at the pleading stage. I conclude only that plaintiff has done enough to inform defendants what his claim is and the basis for it. *See In re SemGroup Energy Partners,* 729 F. Supp. 2d at 1301 ("A plaintiff adequately alleges loss causation by pleading 'inflation of the stock price due to defendants' painting the company in a favorable, albeit untruthful, light, disclosure of the true state of the company at some late point, and immediate decline in the stock price as a result of the marked reaction to the belated disclosure.'") (quoting *In re ICG Communications, Inc. Securities Litigation,* No 1:00cv01864-

[9] Citing *United Food & Commercial Workers International Union Local 464A v. Penn,* No. 20-cv-01966-RM-MEH, 2022 WL 684169 (D. Colo. March 8, 2022), defendants argue in their supplemental brief that this case should be dismissed for failure adequately to allege that the price at which Mr. Fuller purchased his stock was affected (inflated) because of the conspiracy. ECF No. 94 at 2. Common sense suggests that large companies managed by bright executives would not participate in a price-fixing or bid-rigging conspiracy without an expectation that it would affect their performance and, therefore, their stock. The alleged fact that the stock price fell immediately after the disclosure of the conspiracy was made supports the inference that the price had been affected by the concealment of the conspiracy. Indeed, in the Factual Basis section of the Plea Agreement in the criminal case where Pilgrim's Pride pled guilty to price-fixing and bid rigging, it agreed that its participation in the conspiracy affected at least $361 million in broiler chicken products. *United States v. Pilgrim's Pride Corporation,* No. 20-cr-00330-RM (D. Colo.), ECF No. 58 in that case at 4. *See* SAC, ECF No. 47, at ¶8 ("These secret, collusive efforts by the industry provided unprecedented financial stability to the industry and allowed Pilgrim to report record earnings and profit margins during the Class period between February 21, 2014 and November 17, 2016."). *See also id.* at ¶¶168, 270, 273, 305, 378As I have indicated, loss causation is an element as to which the PSLRA's heightened pleading standard does not apply.

REB-BNB, 2006 WL 41662, at *10 (D. Colo. Feb. 7, 2006)). *See also Prissert v. EMCORE Corp.,*894 F. Supp. 2d 1361, 1374-77 (D.N.M 2012) (plaintiffs did not allege that the purported misrepresentations on which they based their claims were publicly disclosed or that they caused the stock price to fall).

**ORDER**

Defendant's motion to dismiss the Second Amended Complaint, ECF No. 58, is GRANTED IN PART AND DENIED IN PART. It is granted as to defendant Fabio Sandri, and the civil action is dismissed with prejudice as to him. The motion is denied as to defendants Pilgrim's Pride Corporation and William W. Lovette. Plaintiff is granted leave to file a Third Amended Complaint for the purpose of adding references to the events of which this Court has taken judicial notice that took place after the SAC was filed within 10 days. The remaining defendants shall file their Answer within 30 days after the Third Amended Complaint is filed. The parties shall file a jointly proposed Scheduling Order within 15 days after the Answer is filed.

DATED this 26th day of December, 2023.

BY THE COURT:

R. Brooke Jackson
Senior United States District Judge