**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re PILGRIM'S PRIDE CORPORATION SECURITIES LITIGATION | No. 1:16-cv-02611-RBJ |
| | Hon. R. Brooke Jackson |

**LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES
AND SERVICE AWARD TO LEAD PLAINTIFF
AND MEMORANDUM OF LAW IN SUPPORT**

Lead Plaintiff George Fuller ("Plaintiff" or "Lead Plaintiff") respectfully submits this memorandum in support of his motion for: (i) an award of attorneys' fees of one-third of the all-cash $41,500,000 Settlement Fund to Lead Counsel Kahn Swick & Foti, LLC ("KSF" or "Lead Counsel"); (ii) reimbursement of necessary and reasonable litigation expenses of $425,000; and (iii) a service award of $40,000 to Lead Plaintiff.

## I.    PRELIMINARY STATEMENT[1]

Over the course of this eight-and-a-half-year litigation, Plaintiff and the Settlement Class overcame numerous challenges on their path to recovery. After the Amended Complaint was first dismissed (without prejudice) in March 2018, some plaintiffs may have accepted the loss and moved on. But here, Plaintiff and Lead Counsel continued to investigate, filed a second amended complaint ("SAC"), opposed a second motion to dismiss by Defendants, briefed a motion for reconsideration when the SAC was also dismissed (this time with prejudice), appealed novel issues regarding the statute of repose and the relation-back doctrine to the Tenth Circuit, won the appeal, spent months negotiating with Defendants regarding the production of documents, expeditiously analyzed hundreds of thousands of documents, and negotiated the Settlement with the assistance

---

[1] All undefined terms herein shall have the meeting ascribed to them in the Stipulation of Settlement (ECF No. 128-1).

of an experienced mediator. *See* Declaration of Kim E. Miller ("Miller Decl.") at ¶¶ 10-38, 91.[2] After putting in this work, for which Lead Counsel has received no compensation, Plaintiff and Lead Counsel are confident that the proposed Settlement, which provides for an all-cash payment of $41,500,000 in exchange for resolution of all claims against Defendants, is an extremely favorable result for the Settlement Class.

In light of these facts, Lead Counsel respectfully seeks an award of attorneys' fees of $33^{1/3}$% of the Settlement Fund, or $13,833,333.33 plus interest. The requested award, which represents a modest lodestar multiplier of 2.04, is more than reasonable in light of Lead Counsel's significant efforts and the substantial benefits conferred upon the Settlement Class, and is consistent with Tenth Circuit precedent. In addition, Lead Counsel respectfully requests reimbursement of $425,000, plus interest, for its reasonable, out-of-pocket expenses incurred in prosecuting this Action and successfully resolving the claims. These expenses are the type of expenses that are regularly approved by courts within this Circuit. *See* Miller Decl. at ¶ 123. Finally, Lead Counsel requests a service award of $40,000 to Lead Plaintiff Fuller as compensation for his service to the Settlement Class, as provided for in the PSLRA. *See id.* at ¶¶ 134-36.

## II.   ARGUMENT

### A.   Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund

As the Supreme Court has long held, "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This practice ensures "that counsel are both

---

[2] Lead Counsel respectfully refers the Court to the Miller Declaration for a detailed description of the factual background and procedural history of the Action, the negotiations leading to the Settlement, and the reasonableness of Lead Counsel's request for attorneys' fees and expenses.

compensated for risk and rewarded for success, where, as here, the Class receives significant benefit." *Cook v. Rockwell Int'l Corp.*, No. 90-cv-181, 2017 U.S. Dist. LEXIS 181814, at *10 (D. Colo. Apr. 28, 2017). The standard practice in the Tenth Circuit, and endorsed by the PSLRA, is to award fees based on "the percentage-of-the-fund method." *See In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, No. 09-md-2063, 2014 U.S. Dist. LEXIS 142673, at *47 (D. Colo. July 31, 2014) (citation omitted); 15 U.S.C. § 78u-4(a)(6) ("Total attorneys' fees . . . shall not exceed a reasonable percentage of the amount . . . paid to the class."). Courts in this Circuit may (but are not required to) use counsel's lodestar figure as a "cross check" to ensure the percentage is reasonable. *See*, *e.g.*, *In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1141 (10th Cir. 2023). As discussed below, the requested attorneys' fee of one-third of the Settlement Fund ($13,833,333.33) is both standard in this Circuit and eminently reasonable in light of the high caliber of work performed and the strong result achieved for the Settlement Class.

### B.    Analysis of the Relevant Factors Confirms the Requested Fee is Reasonable

To determine the fee award percentage, courts in this Circuit consider the *Johnson* factors:

> (1) The time and labor required by counsel; (2) the novelty and difficulty of the legal question presented; (3) the skill required to represent the class appropriately; (4) the preclusion of other employment by the attorneys due to the acceptance of this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Rothe v. Battelle Mem'l Inst.*, No. 18-cv-3179, 2021 U.S. Dist. LEXIS 117836, at *23-24 (D. Colo. June 24, 2021) (Jackson, J.) (citation omitted). An analysis of these factors demonstrates that Lead Counsel's requested fee of one third of the Settlement Fund, or $13,833,333.33 , plus interest, is fair, reasonable, and should be granted by the Court.

1.    **The Time and Labor Expended by Lead Counsel (Factor 1) and Preclusion of Other Employment by Lead Counsel (Factor 4)**

The time and effort Lead Counsel devoted to this case to obtain the $41,500,000 recovery confirms that the request for an award of $33^{1/3}\%$ of the Settlement Fund is reasonable. Over the past eight-and-a-half years, Lead Counsel: extensively investigated Plaintiff's claims; filed an amended complaint and opposed Defendants' motion to dismiss; spent years investigating and diligently monitoring media reports and dockets for new facts supporting Plaintiff's claims; filed a second amended complaint and again opposed Defendants' motion to dismiss; moved for reconsideration of the SAC dismissal; successfully appealed the dismissal to the Tenth Circuit, arguing multiple issues of first impression which required thorough briefing and oral argument; filed a third amended complaint; spent months negotiating with Defendants regarding discovery, particularly search terms and document custodians; served document subpoenas on eight third parties and met and conferred with counsel for these parties; received approximately 1.1 million documents (more than 10.5 million pages) from Defendants, with the promise of more to come; using targeted searches to prioritize the most important documents, conducted a detailed review and analysis of numerous documents produced by Defendants and third parties; submitted a mediation brief and engaged in a full-day mediation and follow-up discussions; prepared for the depositions of Plaintiff and Plaintiff's market efficiency expert while post-mediation settlement discussions continued; reached an agreement in principle; negotiated a favorable Stipulation of Settlement with Defendants; and worked with the Claims Administrator to implement the Plan of Allocation preliminarily approved by the Court. *See* Miller Decl. at ¶¶ 10-38, 91.

Since the inception of the case, Lead Counsel has devoted more than 8,700 hours to this litigation for a total lodestar of $6,763,297.50. *See id.* at ¶ 92. Moreover, Lead Counsel will

necessarily expend many additional hours ensuring the claims process runs smoothly for the benefit of the Settlement Class—work for which no additional compensation will be sought. *See id.* at ¶ 101; *see also Peace Officers' Annuity & Ben. Fund of Ga. v. Davita Inc.*, No. 17-cv-0304, 2021 U.S. Dist. LEXIS 131699, at *5-6 (D. Colo. July 15, 2021) ("Lead Counsel will continue to expend additional time and out-of-pocket expenses in connection with the settlement administration . . . this factor supports the requested award."). The significant amount of time and labor spent on this case necessarily precluded Lead Counsel from other employment. In *Jeffrey Pan v. Atlas Real Est. Grp. LLC*, the court found this *Johnson* factor was satisfied when counsel spent 179.30 hours on the case. No. 23-cv-910, 2025 U.S. Dist. LEXIS 43019, at *16 (D. Colo. Mar. 10, 2025). Here, where Lead Counsel has spent over ***8,700*** hours on the case, this factor unquestionably speaks to the reasonableness of the fee.

### 2. The Difficulty of Questions Raised by the Litigation (Factor 2)

"Litigating an action under the PSLRA is not a simple undertaking, especially given the specificity required to plead such claims." *In re Crocs, Inc. Secs. Litig.*, No. 07-cv-2351, 2014 U.S. Dist. LEXIS 134396, at *8 (D. Colo. Sept. 18, 2024). "Courts have long recognized that securities class actions present inherently complex and novel issues, which are constantly evolving." *Voulgaris v. Array Biopharma*, No. 17-cv-2789, 2021 U.S. Dist. LEXIS 249646, at *39 (D. Colo. Dec. 3, 2021) (collecting cases). This case was no exception. Plaintiff faced all the usual difficulties of proving the elements of a securities claim under the PSLRA, including scienter (which is often considered "the most difficult and controversial aspect of a securities fraud claim," *see Fishoff v. Coty Inc.*, No. 09-cv-0628, 2010 U.S. Dist. LEXIS 6242, at *5 (S.D.N.Y. Jan. 25, 2010)) and loss causation, which would likely come down to a "battle of experts" at trial. *See*

*McFadden v. Sprint Commc'ns, LLC*, No. 22-cv-2464, 2024 U.S. Dist. LEXIS 64602, at \*16-17 (D. Kan. Apr. 8, 2024) (where key issues would need to be settled by "a battle of the experts in a highly technical field . . . doubt about the ultimate outcome would accompany the case all the way to trial"); *see also* Miller Decl. at ¶¶ 44-60 (detailing the risks of continued litigation).

In addition to these notoriously difficult issues, the falsity of Defendants' statements was predicated on violations of federal and state antitrust laws, which are notoriously complex themselves. *See KPH Healthcare Servs., Inc. v. Mylan*, No. 20-cv-2065, 2024 U.S. Dist. LEXIS 120017, at \*15 (D. Kan. July 9, 2024) ("[A]n antitrust class action is arguably the most complex action to prosecute.") (citation omitted). In fact, *two* previous criminal trials in which Defendant Lovette was charged with violating antitrust laws ended in hung juries (and he was acquitted by the third jury). Prosecution of this case so far has required Lead Counsel to become knowledgeable about this complicated area of the law, and would have required even more research and preparation had the Action gone on to summary judgment (at which stage Defendants no doubt would have argued a lack of underlying antitrust violation) and trial, particularly because Defense Counsel previously represented PPC in an antitrust matter based on substantially similar facts, and thus had knowledge of relevant facts and defenses before the instant case even proceeded past the pleading phase. *See* Miller Decl. at ¶ 104. Even though Plaintiff has a proverbial "ace-in-the-hole" —that PPC pled guilty to antitrust charges—Defendants would no doubt move to exclude this at trial. *See In re Four Seasons Sec. Laws Litig.*, 58 F.R.D. 19, 37 (W.D. Okla. 1972) ("complicated problems of proof and admissibility of evidence" contributed to the complexity of plaintiff's case).

The complex legal and factual obstacles presented in this case support the requested fee. *See In re NU Skin Enter., Inc.*, No. 14-cv-33, 2016 U.S. Dist. LEXIS 166250, at \*6 (D. Utah Oct.

13, 2016) (noting the risks presented by "Defendants' defenses concerning the falsity of their statements, scienter, loss causation, and damages" weighed in favor of fee award).

### 3.   The Skill Required to Represent the Class and the Experience, Reputation, and Ability of the Attorneys (Factors 3 and 9)

Given the inherently difficult and novel issues involved, it is clear Plaintiff and the Settlement Class would not have achieved the very favorable $41,500,000 all-cash settlement without skilled, highly-experienced counsel. Lead Counsel has extensive experience successfully prosecuting class actions in the specialized field of securities litigation, which it leveraged to achieve the excellent result here. *See* Miller Decl. at Ex. B (KSF Firm Resumé).

Without skilled counsel, it is highly unlikely Plaintiff's appeal would have been successful. In fact, studies have shown that appellate courts typically only reverse a lower court decision in a private civil case 10-14% of the time.[3] Here, Lead Counsel intensively researched, briefed, and presented oral argument on issues of first impression to the Tenth Circuit, including how to apply the statute of repose and the "relation back" doctrine of Fed. R. Civ. P. 15(c). Plaintiff succeeded in this appeal, creating clarifying jurisprudence on these issues and paving the way for future plaintiffs to pursue claims which might otherwise have been dismissed.

Moreover, Defendants PPC and Lovette were ably represented by experienced attorneys from Weil, Gotshal & Manges LLP ("Weil") and Moore & Van Allen PLLC, respectively, who have defended numerous securities cases. *See* Miller Decl. at ¶ 106. That Lead Counsel achieved

---

[3] *See* "Just the Facts: U.S. Courts of Appeals," Judiciary Data and Analysis Office of the Administrative Office of the U.S. Courts, Dec. 20, 2016 (U.S. Appellate Courts reversed lower courts in 10.4-14.2% of private civil cases from 2011-2015); Barry C. Edwards, "Why Appeals Courts Rarely Reverse Lower Courts: An Experimental Study to Explore Affirmation Bias," 68 EMORY L. J. ONLINE 1035 (2019) (U.S. Appellate Courts reversed lower courts in 11.7% of private civil cases from July 2017-July 2018).

the Settlement in the face of high-quality legal opposition further evidences the quality of their efforts and supports the requested 33$^{1/3}$% fee. *See, e.g., In re Signet Jewelers Ltd. Sec. Litig.*, No. 16-cv-6728, 2020 U.S. Dist. LEXIS 128998, at *59-60 (S.D.N.Y. July 21, 2020) ("Defendants were represented by able counsel from Weil, Gotshal & Manges LLP . . . Notwithstanding this capable opposition, Lead Counsel's litigation efforts and ability to present a strong case enabled it to achieve the Settlement for the benefit of the Class."); *Voulgaris*, 2021 U.S. Dist. LEXIS 249646, at *40 (that plaintiffs' counsel "faced formidable opposition" weighed in favor of fee award).

### 4. The Amount Involved and Results Obtained (Factor 8)

Courts in this District have repeatedly found that, when determining the amount of fees to be awarded, the "greatest weight should be given to the monetary results achieved for the benefits of the class." *Anderson v. Merit Energy Co.*, No. 07-cv-916, 2009 U.S. Dist. LEXIS 100681, at *11 (D. Colo. Oct. 20, 2009). However, courts do not expect cases to settle for anywhere near the maximum potential damages. *See*, *e.g.*, *Crocs*, 306 F.R.D. at 691 n.20 (approving settlement of "approximately 1.3% of the amount of damages that could be achieved"). Here, if every single issue were to go Plaintiff's way through class certification, summary judgment, trial, and appeals, Plaintiff's economics expert estimated maximum potential recoverable damages of $256 million. *See* Miller Decl. at ¶ 107. Thus, the $41,500,000 Settlement represents *16%* of maximum recoverable damages: more than five times the median rate of settlement to investor losses for securities cases in 2024 with investor losses of $100 million or more (less than 3.0%). *See id.* & Ex C.  This exceptional result weighs in favor of the requested fee.

### 5. The Requested Fee is Customary in the Tenth Circuit (Factor 5) and in Accordance with Fees Awarded in Similar Cases (Factor 12)

"Courts in this district have recognized that '[t]he customary fee to class counsel in a

common fund settlement is approximately one-third of the economic benefit bestowed on the class.'" *Rothe*, 2021 U.S. Dist. LEXIS 117836, at *28 (citing *Anderson*, 2009 U.S. Dist. LEXIS 100681) (collecting cases). Lead Counsel's fee request of $33^{1/3}\%$ of the Settlement Fund is wholly consistent with the percentages that courts in this Circuit have awarded in similar securities class action and complex litigation settlements. *See, e.g.*, *Voulgaris v. Array Biopharma, Inc.*, 60 F.4th 1259, 1264 (10th Cir. 2023) (affirming award of 33% attorneys' fees); *San Miguel Hosp. Corp. v. Johnson & Johnson*, No. 23-cv-903, 2025 U.S. Dist. LEXIS 38817, at *10 (D.N.M. Mar. 4, 2025) (granting fees of one-third of settlement fund); *SandRidge Energy Inc. Sec. Litig.*, No. 12-cv-1341, ECF No. 592 (W.D. Okla. Dec. 30, 2022) (granting fees of one-third of settlement fund); *Correa v. Liberty Oilfield Servs.*, No. 1:20-cv-946, ECF No. 138 (D. Colo. Oct. 7, 2022) (same); *Rothe*, 2021 U.S. Dist. LEXIS 117836, at *35 (same); *Elna Sefcovic, LLC v. Tep Rocky Mt., LLC*, No. 17-cv-1990, 2019 U.S. Dist. LEXIS 243629 (D. Colo. Mar. 15, 2019) (same); *In re Syngenta AG MIR 162 Corn Litig. v. Syngenta AG*, 357 F. Supp. 3d 1094, 1116 (D. Kan. 2018) (same).

"Although not required in the Tenth Circuit, a lodestar 'cross check' analysis also supports Lead Counsel's fee request." *Voulgaris*, 2021 U.S. Dist. LEXIS 249646, at *41. Lead Counsel has expended 8,775.1 hours prosecuting the claims against Defendants, for a lodestar of $6,763,297.50. *See* Miller Decl. at ¶ 114. Thus, the requested $33^{1/3}\%$ fee results in a multiplier of 2.04, which is well within the typical range routinely approved by courts in this Circuit where attorneys' fees of one-third are awarded. *See, e.g.*, *Voulgaris*, 2021 U.S. Dist. LEXIS 249646, at *37 (2.8 multiplier); *Rothe*, 2021 U.S. Dist. LEXIS 117836 at *34 (3.61 multiplier); *Davita*, 2021 U.S. Dist. LEXIS 131699, at *8 (2.75 multiplier); *Cook*, 2017 U.S. Dist. LEXIS 181814, at *10 (2.41 multiplier); *see also* Miller Decl. at ¶ 116 (chart of similar settlements).

Lead Counsel cut substantial time when calculating its lodestar to ensure the multiplier reflects maximum efficiency. *See* Miller Decl. at ¶ 94. Lead Counsel has also excluded any time spent preparing for the final approval hearing, as well as time spent preparing this fee and expense application. *Id*. The lodestar multiplier will be further lowered by the significant additional time that will be spent should the Settlement be approved. *Id*., s*ee also*, *Pearlstein v. Blackberry Ltd.*, No. 13-cv-7060, 2022 U.S. Dist. LEXIS 177786, at *28 (S.D.N.Y. Sept. 28, 2022) (reasonableness of $33^{13}$% fee supported by the fact that "after final approval there will be significant additional tasks relating to the Settlement, lowering the multiplier even further").

The billing rates used to develop Lead Counsel's lodestar are also reasonable. The hourly billing rates for KSF attorneys working on this case ranged from $450 (associates) to $1,250 (senior partner). *See id.* at ¶ 100. These rates are comparable to peer firms litigating similar matters, and similar rates have been approved in this district. *See*, *e.g.*, *Shafer v. Lightning EMotors, Inc.*, No. 1:21-cv-2774, ECF No. 134 at 8, ECF No. 153 (D. Colo. Nov. 20, 2024) (approving rates of $375 to $1,600 per hour; attorneys' fees of one-third granted). And such rates are often far lower than those charged by defense counsel—including PPC's Counsel here.[4]

### 6. The Contingent Nature of the Fee (Factor 6) and Undesirability of the Action (Factor 10)

The significant burdens inherent in a contingent fee arrangement in a case of this magnitude "weighs heavily in support of a substantial fee award." *Syngenta*, 357 F. Supp. 3d at 1113. The considerable time and labor expended by Lead Counsel on this case was conducted on a fully

---

[4] *See* Staci Zaretsky, "The Biglaw Firms With The Highest Hourly Rates (2024)," *Above the Law* (Nov. 14, 2024), *available at* https://abovethelaw.com/2024/11/the-biglaw-firms-with-the-highest-hourly-rates-2024/ (listing Weil among the firms with the highest rates in 2024); *see also* Miller Decl. at ¶ 99.

contingent basis, and all necessary expenses were paid out-of-pocket by Lead Counsel. "The risk that Plaintiffs' Counsel would recover no compensation for their extensive efforts was 'not merely hypothetical,'" where, as here, "Plaintiffs were subject to the PSLRA's heightened pleading standard and faced the immediate possibility of an adverse decision by the Tenth Circuit." *Crocs*, 2014 U.S. Dist. LEXIS 134396, at *16 (internal citation omitted).

"Such cases are often seen as undesirable." *In re Spectranetics Corp. Sec. Litig.*, No. 08-cv-2048, 2011 U.S. Dist. LEXIS 159436, at *11 (D. Colo. Apr. 4, 2011). The perceived "undesirability" of the case is further underscored by the fact that only one other party submitted a lead plaintiff application, which it subsequently withdrew. *See* ECF No. 24; *Thorpe v. Walter Inv. Mgmt. Corp.*, No. 14-cv-20880, 2016 U.S. Dist. LEXIS 14133, at *32 (S.D. Fla. 2016) (undesirability where "Counsel was the only counsel willing to take on this litigation"). "In light of these difficulties, 'public policy supports granting attorneys fees that are sufficient to encourage plaintiffs' counsel to bring securities class actions.'" *Crocs*, 2014 U.S. Dist. LEXIS 134396, at *16 (citation omitted).

### 7.     Additional *Johnson* Factors 7 and 11 Support the Requested Fee

The tight schedule for class certification briefing, fact discovery, summary judgment, and trial preparation (*see* ECF No. 118; Miller Decl. at ¶ 24) supports the requested fee per *Johnson* Factor 7. *See Rothe*, 2021 U.S. Dist. LEXIS 117836, at *31 ("The Johnson court held that priority work delaying a lawyer's other work is entitled to a premium."). *Johnson* Factor 11 examines the nature and length of the professional relationship with the client. This is the first time KSF has been engaged by Plaintiff, and no relationship exists or existed outside their work on this case. *See* Miller Decl. at ¶ 113. This factor also supports the requested fee. *See Rothe*, 2021 U.S. Dist. LEXIS

117836, at *34 (approving 33$^{1/3}$% fee where no "special relationship" existed between Lead Counsel and Lead Plaintiff).

>       **8.    Lead Plaintiff's Endorsement of, and the Class's Reaction to, the Fee Request Further Supports the Reasonableness of the Request**

Lead Plaintiff, who closely supervised Lead Counsel throughout this litigation, fully supports Lead Counsel's fee request. *See* Declaration of George Fuller ("Fuller Decl."; Ex. D to Miller Decl.) at ¶ 5. Further, courts routinely find that "the fact that none of the class members objected to the requested attorneys' fees is significant and weighs in favor of the requested award." *Crocs*, 2014 U.S. Dist. LEXIS 134396, at *16; *see also Anderson*, 2009 U.S. Dist. LEXIS 100681, at *14 ("The absence of any Class Members' objection is an additional factor that supports this Court's approval of the requested attorneys' fees."). Here, to date not a single Settlement Class Member has objected to the requested fee award, and no exclusion requests have been received. *See* Miller Decl. at ¶ 118.[5] Lead Plaintiff's support and the Settlement Class's endorsement provide substantial support for approval of Lead Counsel's fee request.

>   **C.    Lead Counsel Should Be Reimbursed for $425,000 in Expenses**

It is well established that "an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund." *Or. Laborers Emps. Pension Trust Fund v. Maxar Techs. Inc.*, No. 19-cv-124, 2024 U.S. Dist. LEXIS 4704, at *24 (D. Colo. Jan. 9, 2024) (citation omitted). Lead Counsel's expenses of $425,000, itemized in detail in the Miller Declaration at ¶ 123, should be reimbursed because they are reasonable and of the type that are usually paid by clients in non-contingent litigation. *See id.*

---

[5] The deadline for exclusions and objections to the Settlement is May 27, 2025. Lead Counsel will supplement this submission in its reply memorandum on June 10, 2025, in accordance with the Court's Order. *See* ECF No. 132.5,

Notably, Lead Counsel's actual incurred expenses ($427,877.81) are just above the noticed cap of $425,000, but Lead Counsel is limiting its request to $425,000.

Nearly half of Lead Counsel's expenses were for the fees of Plaintiff's economics expert, who submitted an 80-page page report on market efficiency in support of Plaintiff's motion for class certification. *See id.* at ¶ 124; ECF No. 124-2. "Without the expert witnesses retained by Plaintiff[ ] and Lead Counsel, it is unclear whether Plaintiff[ ] would have secured the result presently before the Court." *Voulgaris*, 2021 U.S. Dist. LEXIS 249646, at *44. Another significant yet necessary expense was the cost to house, analyze, and review the more than 1.1 million documents produced by Defendants and third parties. *See* Miller Decl. at ¶ 126. "[I]t has become impracticable to litigate a complex, document-intensive case like this one without making extensive use of an electronic database." *AECOM Tech. Servs. v. Flatiron AECOM, LLC*, No. 19-cv-2811, 2025 U.S. Dist. LEXIS 44073, at *14 (D. Colo. Mar. 11, 2025) (finding "$984,980.48 in e-discovery costs were reasonably and necessarily incurred" in the prosecution of the case). The remainder of the expenses consist of mediator fees, legal and factual research, court fees, travel, photocopies, and other routine litigation expenses, that are the type of expenses normally charged to clients in non-contingency cases. *See* Miller Decl. at ¶¶ 127-29.

Considering the length and complexity of the action, Lead Counsel's requested expenses of $425,000 are eminently reasonable. *See*, *e.g.*, *Maxar Techs.*, 2024 U.S. Dist. LEXIS 4704, at *24-25 (where securities case pending for five years settled mid-discovery, awarding "$825,853.33 in litigation expenses, including expert fees, mediation expenses, discovery-related costs, and investigation expenses"); *Davita*, 2021 U.S. Dist. LEXIS 131699, at *12 ("expert fees, mediation expenses, discovery-related costs, and investigation expenses" are "routinely awarded

in similar actions"; awarding $547,409.27 in expenses in securities case pending four years that

settled mid-discovery); *Medina v. Clovis Oncology*, No. 15-cv-2546, 2017 U.S. Dist. LEXIS

233687, at *21 (D. Colo. Oct. 26, 2017) (awarding $427,133.68 in expenses in securities class

action pending two years and settled mid-discovery).

### D.    The Proposed Service Award to Lead Plaintiff Is Reasonable

The PSLRA permits securities plaintiffs to seek an "award of reasonable costs and

expenses . . . directly relating to the representation of the class[]." 15 U.S.C. § 78u-4(a)(4). In

making such an award, courts in this Circuit consider "(1) the actions the class  representative took

to protect the interests of the class; (2) the degree to which the class has benefitted from those

actions; and (3) the amount of time and effort the class representative expended in pursuing the

litigation." *DaVita*, 2021 U.S. Dist. LEXIS 71038, at *19.

Mr. Fuller has been actively overseeing this Action since he was appointed Lead Plaintiff

on April 4, 2017. He monitored the Action and received regular updates on case developments,

reviewed case-related documents, reviewed and edited the amended complaints, reviewed and

commented on Defendants' motions to dismiss and Plaintiff's oppositions thereto, discussed and

reviewed the briefing for the appeal, reviewed Defendants' requests for production of documents

and searched for and produced responsive documents, reviewed and commented on Plaintiff's

class certification motion, closely communicated with Counsel during settlement negotiations, and

approved the Settlement.  *See* Miller Decl. at ¶ 135; Fuller Decl. (Ex. D) at ¶ 7.  For those reasons,

Plaintiff submits that the relatively modest request of service award of $40,000 to compensate him

for his time and service to the Settlement Class throughout this case is reasonable and should be

granted. *See*, *e.g.*, *Rothe*, 2021 U.S. Dist. LEXIS 117836, at *36 (providing for "a service payment

of $80,000 for the class representatives").

## III.  CONCLUSION

Plaintiff respectfully requests the Court: (a) award attorneys' fees to Lead Counsel KSF of one-third of the gross Settlement fund, *i.e.*, $13,833,333.33 , plus interest; (b) reimburse expenses of $425,000, plus interest; and (c) grant a service award of $40,000 to Lead Plaintiff Fuller.

DATED: May 16, 2025                          **KAHN SWICK & FOTI, LLC**

/s/ *Kim E. Miller*
Kim E. Miller
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (212) 696-3730
Facsimile: (504) 455-1498
kim.miller@ksfcounsel.com

*Lead Counsel for Lead Plaintiff and the Settlement Class*

## LOCAL RULE 7.1(a) CERTIFICATE

On May 15, 2025, I conferred with counsel for all Defendants *via* email, who support the relief sought by this Motion.

/s/ *Kim E. Miller*
Kim E. Miller

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2025, I filed the foregoing using the CM/ECF system, which will provide service of such filing(s) to all counsel of record by *via* email.

/s/ *Kim E. Miller*
Kim E. Miller